UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
BOARD OF EDUCATION OF THE
CITY SCHOOL DISTRICT OF THE
CITY OF NEW YORK,

             Plaintiff,

                              03 Civ. 390 (DAB)
    -against-                 MEMORANDUM AND ORDER

R.R., on behalf of her
minor child, T.R.,

             Defendant.

-------------------------------X

      DEBORAH A. BATTS, United States District Judge.

      The Board of Education of the City School District of the

City of New York ("Board"), who is the Plaintiff in this case,

seeks the reversal of a State Review Officer's decision in favor

of Defendant R.R.  R.R. had challenged the Individualized

Educational Program ("IEP") that the Board had formulated for her

son, T.R.  The State Review Officer ("SRO") found that T.R.'s IEP

was procedurally defective, and accordingly required the Board to

reimburse R.R. for T.R.'s private school tuition.

      Now before the Court are Plaintiff's and Defendant's cross

motions for summary judgment.  Plaintiff moves the Court to find

(1) that T.R.'s IEP was not beset by procedural defects; (2) that

the IEP-recommended placement was reasonably calculated to foster

educational benefits for T.R.; and (3) that tuition reimbursement

is improper.  Defendant moves this Court to find (1) that R.R.'s IEP conference contained procedural defects; (2) that T.R.'s recommended placement was substantively inappropriate; and (3) that reimbursement for T.R.'s private school tuition is warranted.

For the reasons contained herein, the Board's Motion for Summary Judgment is GRANTED, and R.R.'s Motion for Summary Judgment is DENIED.


## BACKGROUND

The Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., allots federal funds for states that offer a "free and appropriate public education" to children with disabilities.  20 U.S.C. § 1412(a)(1)(A).  The state must establish for each child an Individualized Educational Program ("IEP") which is "reasonably calculated to enable the child to receive educational benefits."  Board of Educ. v. Rowley, 458 U.S. 176, 207, 102 S. Ct. 3034 (1982).  If the school district fails to supply a free and appropriate education in a timely manner, the child's parent may seek tuition reimbursement for the child's placement in a private school.  20 U.S.C. § 1412(a)(10)(C)(ii).

New York receives federal funds under this statute, and charges Committees on Special Education ("CSE"s) with the responsibility of formulating the IEPs. The CSEs are established by local boards of education. N.Y. Educ. L. § 4402(1)(b)(1); 8 N.Y.C.R.R. 200.3(a). Each CSE is comprised of, among other people, the child's parent or guardian, the child's regular education teacher, the child's special education teacher, and a school psychologist. 8 N.Y.C.R.R. 200.3(a)(1). Importantly, the CSE's membership also shall include "an additional parent member of a student with a disability residing in the school district or a neighboring school district, provided such parent is not a required member if the parents of the student request that the additional parent member not participate in the meeting . . . ." 8 N.Y.C.R.R. 200.3(a)(i)(viii).

After the CSE has formulated an IEP, the parent still may feel it inadequately addresses her or his child's needs. "New York parents who believe an IEP is insufficient under the IDEA may challenge it in an 'impartial due process hearing,' see 20 U.S.C. § 1415(f), before an [Impartial Hearing Officer] appointed by the local board of education, see N.Y. Educ. L. § 4402(1)." Bd. of Educ. v. Mills, 2005 WL 1618765 at *1 (S.D.N.Y. Jul. 8, 2005), quoting Grim v. Rhinebeck Central Sch. Dist., 346 F.3d 377, 379 (2d Cir. 2003). "At this hearing and throughout the

subsequent administrative and judicial appeals process, the school district bears the burden of proving by a preponderance of the evidence that: (1) it complied with the IDEA procedural requirements; and that (2) the IEP was 'reasonably calculated' to confer 'educational benefits' on the students." J.R. v. Bd. of Educ of the City of Rye Sch. Dist., 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004) (quoting Rowley, 458 U.S. at 206-07). Appeal of the IHO's decision is available before a State Review Officer ("SRO"), 20 U.S.C. § 1415(g), and then before a state or federal judiciary, 20 U.S.C. § 1415(i)(2)(A).

## FACTS

Defendant R.R. and her child, T.R., reside in the New York City School District. (Def.'s Statement of Undisputed Facts ("Def.'s Statement") at ¶ 1.) T.R. is a minor child with a disability (Id. at ¶¶ 3-4), and therefore is entitled to an IEP (Id. at ¶ 3).

In 1999, R.R. placed T.R. at the Mary McDowell Center ("Mary McDowell"), a private special education school. (Compl. at ¶ 7.) R.R. placed T.R. there even though T.R.'s IEP had recommended an alternate public placement. (In re Application of a Child with a Disability, No. 01-096, Oct. 1, 2002 ("Application") in Baum Dec., Ex. A at 1-2.) A few months after T.R. matriculated at

4

Mary McDowell, a CSE convened to determine whether the State could design another IEP – one that would be satisfactory both to the Board and to his mother.  (Compl. at ¶ 8.)

The CSE met on April 14, 2000 to coordinate T.R.'s new IEP. (Baum Dec. in Support of Def.'s Mot. ("Baum Dec."),  Ex. B, at 4.)   Just before the CSE meeting commenced, R.R. waived in a handwritten note her right to a parent member on the CSE.  (Baum Dec., Ex. B, at 55.)  R.R. testified before the IHO that the start of the CSE meeting was "chaotic because [there was] no parent rep [sic].  [The CSE participants] weren't sure if the parent member was coming or not.  I had to sign a waiver." (Transcript for In the Matter of T.R., Case No. 41841, in Baum Dec., Ex. C ("Transcript"), at 314.)

No one contacted T.R.'s private therapist during the CSE meeting, even though the therapist's contact information appeared on the front of the IEP.  (Transcript at 193.)  At no time after the commencement of the CSE meeting did R.R. request that the private therapist be contacted.  (Id. at 338.)  R.R. also had already advised the therapist not to respond to the CSE's request for input.  (Id. at 210.)

The CSE ultimately formulated an IEP recommending that T.R. be placed not at Mary McDowell, but at a public school in New York City.  R.R. received a Final Notice of Recommendation dated

5

July 14, 2000, but nonetheless opted to re-enroll her son in Mary
McDowell for another year. (<u>Application</u> at 2.)

R.R. subsequently commenced a proceeding before an Impartial
Hearing Officer ("IHO") to challenge the IEP, and to seek tuition
reimbursement for the 2000-2001 school year (<u>Id.</u> at 2.) For the
most part, testimony before the IHO indicated that the IEP
satisfactorily designated a free and appropriate public education
for T.R. T.R.'s teacher at Mary McDowell worried that large
class sizes would render him less able to manage being with his
non-disabled peers. (<u>See</u> Transcript at 274-75.) The head of Mary
McDowell further testified that placing T.R. in the IEP-
recommended public school would have been "inappropriate" because
T.R.'s "constant comparisons of himself to other children in
general education would have added to his insecurity."
(Transcript at 251-56.)

Otherwise, an abundant amount of evidence before the IHO
suggested that the IEP was appropriate. The Board's
psychologist, the Board's Supervisor of Special Education, the
Board's social worker, as well as a special education teacher at
the IEP-recommended school – each of whom were members of the CSE
– all attested to the appropriateness of T.R.'s IEP-recommended
placement. That placement promised small group instruction under
the guidance of a special education teacher, a general education

teacher, and a paraprofessional. (Transcript at 69-72, 85.) His classes there would have integrated regular-education with special-education students, but would have been small in size. (Transcript at 84-85.) Among the specialized class activities would have been a six-student reading group molded according to T.R.'s reading abilities. (Transcript at 99-105.)

The IHO found that the IEP was reasonably calculated to enable T.R. to receive educational benefits, and that R.R. was not entitled to reimbursement for T.R.'s placement at Mary McDowell, except for the first month's tuition. (Findings of Fact and Decision, In the Matter of T.R., Case No. 41841, at 20-21.) The IHO reasoned that R.R. could have used that first month to compare Mary McDowell with the IEP-recommended school, and thus should not have been expected to pay tuition for that month. (Id.) The IHO did not consider whether the CSE's lack of a parent member resulted in more than a de minimis defect in the IEP.

R.R. appealed the IHO's decision to the SRO. The SRO made no conclusive findings regarding the substantive appropriateness of the IEP. (See generally Application at 4-5.) The SRO's decision, however, did find R.R.'s waiver of the parent member to be defective, therefore constituting a reversible defect. (Id. at 4-5.) The SRO upheld the IHO's grant of tuition reimbursement

for T.R.'s first month at Mary McDowell, but annulled the IHO's denial of tuition reimbursement for the balance of T.R.'s time there.  (Id. at 5.)

The Board now asks this Court to reconsider the SRO's decision, and Defendant R.R. has cross-moved for summary judgment.  For the reasons stated below, the Board's motion is GRANTED, and R.R.'s motion is DENIED.

DISCUSSION

## A.   Legal Standards

### (1)  Legal Standard for Summary Judgment

A district court should grant summary judgment when there is "no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000).  Genuine issues of material fact cannot be created by mere conclusory allegations; summary judgment is appropriate only when, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party."  Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

In assessing when summary judgment should be granted, "there must be more than a 'scintilla of evidence' in the non-movant's favor; there must be evidence upon which a fact-finder could reasonably find for the non-movant." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). While a court must always "resolv[e] ambiguities and draw[ ] reasonable inferences against the moving party," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson), the non-movant may not rely upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Id. at 12. Instead, when the moving party has documented particular facts in the record, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (quoting Fed. R. Civ. P. 56(e)). Establishing such facts requires going beyond the allegations of the pleadings, as the moment has arrived "'to put up or shut up.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). Unsupported allegations in the pleadings thus cannot create a material issue of fact. Id.

### (2)    Legal Standard of Judicial Review under the IDEA

A federal court reviewing administrative proceedings under the IDEA "shall receive the records of the administrative proceedings"; "shall hear additional evidence at the request of a party"; and "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).  "The Supreme Court and [the Second Circuit] have interpreted the IDEA as strictly limiting judicial review of state administrative decisions." Grim v. Rhinebeck Central Sch. Dist., 346 F.3d 377, 380-81 (2d Cir. 2003), citing Rowley, 458 U.S. at 204-08; Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 129 (2d Cir. 1998).  The reviewing federal court "must give 'due weight' to the administrative proceedings, mindful that the judiciary lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." Grim, 346 F.3d at 381, quoting Rowley, 458 U.S. at 206-08 (internal quotation marks omitted).

### B.    The *Carter* Test for Reimbursement

In School Comm. of Burlington v. Dep't of Ed. of Mass., 471 U.S. 359, 369, 105 S. Ct. 1996, 2002, 85 L. Ed. 2d 385 (1985), the Supreme Court held that the IDEA empowered a federal court

"to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act."  Congress intended for local education administrators to cooperate with parents in identifying a "free and appropriate" placement for his or her child.  <u>Florence County Sch. Dist. Four v. Carter</u>, 510 U.S. 7, 12, 114 S. Ct. 361, 364-65, 126 L. Ed. 2d 284 (1993).  Should cooperation efforts fail, parents face the choice of either resigning to what they consider to be an unsatisfactory IEP, or enrolling their child in a private school they believe is better suited to their child's needs.  When a parent chooses the latter course, "it would be an empty victory to have a court tell them several years later that they were right but that these expenditures could not in a proper case be reimbursed by the school officials."  <u>Burlington</u>, 471 U.S. at 370.

The Supreme Court accordingly established a test for determining whether a child's placement in a private school entitles the parent to tuition reimbursement.  Parents who unilaterally change their child's placement contrary to their child's IEP are "entitled to reimbursement <u>only</u> if a federal court concludes both [1] that the public placement violated the IDEA and [2] that the private school placement was proper under

the Act." Carter, 510 U.S. at 15; see also M.S. ex rel. S.S. v. Bd. of Educ. of the City Sch. Dist. of the City of Yonkers, 231 F.3d 96, 102 (2d Cir. 2000) (applying the Carter test).

As to the first part -- that is, whether the public placement violated the IDEA -- the school district bears the burden of proving two prongs by a preponderance of the evidence: (1) the IEP must comply with the IDEA's procedural requirements; and (2) the IEP must have been "reasonably calculated" to confer "educational benefits" on the student. J.R. v. Bd. of Educ of the City of Rye Sch. Dist., 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004) (quoting Rowley, 458 U.S. at 206-07).

Finally, "once a court holds that the public placement violated the IDEA, it is authorized to 'grant such relief as the court determines is appropriate.'" Carter, 510 U.S. at 15-16 (citing 20 U.S.C. § 1415(e)(2). Such relief includes tuition reimbursement. Courts enjoy "broad" discretion in fashioning equitable relief, and must consider "all relevant factors, including the appropriate and reasonable level of reimbursement that should be required." Carter, 458 U.S. at 16.

### (1) The Validity of T.R.'s IEP

#### (a) Procedural Requirements

This Court must consider whether T.R.'s IEP violated the IDEA. According to Rowley, the first prong of this consideration is assessing whether the circumstances surrounding the IEP's formulation comported with proper procedure. Rowley, 458 U.S. 206-07. R.R. alleges that the formulation of her son's IEP involved improper procedure, and therefore is invalid. Specifically, she alleges that the meeting at which the CSE selected her son's IEP improperly excluded a parent member.

The IDEA does not require that a parent member be present at the CSE. See 34 C.F.R. § 300.344 (stating that the IEP team shall include the child's parents; a special education teacher; a regular education teacher; a representative of the Board; an individual, who may be a member of the team in another capacity, who can interpret the implications of evaluation results; and at the discretion of the parent or agency, other individuals who have knowledge or expertise regarding the child). That a parent member was missing from the CSE, therefore, does not amount to an IDEA violation.

New York law, however, does require a parent member, but permits "the parent of the student [to] request that the additional parent member not participate in the meeting." N.Y.

Educ. L. § 4402(b)(1)(a); see also 8 N.Y.C.R.R. § 200.3(a)(1)(viii).

Defendant R.R. waived her right under New York law to a parent member. R.R. concedes that she handwrote a waiver during the CSE meeting. (Def.'s Statement of Undisputed Facts at ¶ 16; Baum Dec., Ex. B, at 55). This alone satisfies the waiver requirements of New York Education Law. See Board of Educ. v. Mills, 2005 WL 1618765, at *2 (S.D.N.Y. Jul. 8, 2005) (finding that a parent's handwritten waiver sufficed, even where parties disputed over whether CSE asked parent to waive right or whether parent affirmatively waived that right). R.R. may have written her waiver amidst a "chaotic" meeting (see Transcript for In the Matter of T.R., Case No. 41841, in Baum Dec., Ex. C, at 314), but she handwrote a waiver nonetheless.

R.R. contends that the parent must "affirmatively" waive her right to a parent member on her own initiative. (Pl.'s Reply Br. at 3), but the statute says nothing about affirmatively initiating the waiver. See Mills, 2005 WL 1618765 at *5 (noting that since the parent-member provision was amended in 1999 to include a waiver option, no case law has required that the participation of a parent member be affirmatively waived). Accordingly, this Court holds that the CSE contained no procedural defects.

14

Plaintiff's motion for summary judgment on this issue is GRANTED, and Defendant's motion is DENIED.

### (b)  Substantive Requirements

That T.R.'s IEP satisfied the IDEA's procedural requirements addresses only the first prong of step one of the Carter reimbursement analysis.  The second prong is determining whether the IEP satisfied IDEA's substantive requirements.  An IEP must satisfy a threshold of substantive appropriateness.  Rowley, 458 U.S. at 207.  To give guidance on what qualifies as a "free and appropriate education", the Supreme Court notes that an IEP must be "reasonably calculated to enable the child to receive educational benefits."  Id.

The IHO found nothing substantively inappropriate about T.R.'s IEP.  (Findings of Fact and Decision, Case No. 41841, in Bowe Dec., Ex. D., at 20.)  Although the SRO remanded the IHO's decision, it did so on other grounds – on the grounds that excluding a parent member from T.R.'s CSE constituted improper procedure.  Because this Court already established in the previous subsection that the CSE was not tainted by improper procedure, and because the SRO never disturbed the IHO's finding that the IEP was substantively appropriate, this Court is faced

with an IEP which administrative hearings already have deemed substantively appropriate.

The IHO's finding that the IEP was appropriate fell well within reason. An abundance of evidence indicates the appropriateness of the IEP. The Board's psychologist, the Board's Supervisor of Special Education, the Board's social worker, as well as a special education teacher at the IEP-recommended school – each of whom were members of the CSE – praised the IEP-recommended placement. The Board psychologist indicated that a "great school experience was available for [T.R.] there." (Transcript at 32-33.) According to the Board's Supervisor of Special Education, T.R. would have "fit in with the class." (Id.) The social worker testified that the IEP-recommended school "would have been a fine placement for [T.R.] to take advantage of" (Id. at 143), and the public school's special education teacher noted that she already instructed two students with needs similar to T.R.'s (Id. at 98-123).

The IEP-recommended placement also promised small group instruction. (Transcript at 85.) T.R.'s class would have been in an integrated setting, but would have been led by a special education teacher, a general education teacher, and a paraprofessional. (Transcript at 69-72.) Seventeen regular education students and four special education students would have

16

comprised T.R.'s class, although it was possible that the makeup
would have shifted to a total of ten special education students
and fifteen general education students.   (Transcript at 84-85.)
T.R.'s reading instruction would have been guided according to
his reading abilities, and would have been given in groups of six
students.   (Transcript 107-09.)

The private therapist testified that, while the IEP goals
suited T.R.'s social and emotional needs (Transcript at 223), the
extent to which the IEP mainstreamed T.R. would keep him from
gaining "ego strengths" and would make him "lose ground."
(Transcript at 236.)   Even considering this testimony, overruling
the IEP would be injudicious in light of the numerous CSE
participants who overwhelmingly praised it, including the Board's
psychologist, the Board's Supervisor of Special Education, the
Board's social worker, and a special education teacher at the
IEP-recommended school.   (Transcript at 32-33, 98-123, 143.)[1]

_____

[1] In determining whether the IHO properly weighed T.R.'s
private therapist's testimony with the testimony of the other
witnesses, this Court notes that Defendant consistently seems to
have averted the CSE from the private therapist's perspective.
For example, when the Board asked T.R.'s private therapist
whether he thought there should be a review of the CSE's
recommendations, R.R. had told him that there was "nothing more
that [the therapist] could do to help matters at the moment."
(See Transcript at 209.)   The private therapist was further
"advised that . . . it was not necessary" to respond to the IEP-
related release he received two months prior to review.   (Id. at
210.)
     But even had the private therapist participated in the CSE,

17

Disturbing the IHO's findings would be especially improper under the standard by which federal courts are to review administrative decisions under the IDEA. As the Supreme Court has noted, "it seems highly unlikely that Congress intended courts to overturn a State's choice of appropriate educational theories in a proceeding conducted pursuant to 20 U.S.C. § 1415(e)(2)." Rowley, 458 U.S. at 207-08. "In assuring that the requirements of [the IDEA] have been met, courts must be careful to avoid imposing their view of preferable educational methods upon the States." Id. at 207. See also J.R. v. Bd. of Educ. of Rye County Sch. Dist., 345 F. Supp. 2d 386, 399 (S.D.N.Y. 2004) ("On this second level of review of the IHO's decision, we accord the deference, traditional on appellate review, to [the IHO's] assessment of the credibility of those witnesses who testified before him.").[2]

---

or in any phase of the IEP-appraisal process, there are no signs that the IHO's decision would have been any different. This Court sees nothing on the record that militates overruling an IEP already deemed substantively appropriate in lower proceedings.

[2] Though R.R., along with administrators at Mary McDowell, testified to T.R.'s progress in the private placement, "the inadequacy of an IEP is not established . . . simply because parents show that a child makes greater progress in a single area in a different program." Walczak, 142 F.3d at 133. Even though the IEP may not have satisfied every one of R.R.'s wishes for her child, "neither [a court's] sympathy, nor more importantly, the IDEA, entitles [a student with disabilities] to the best education that money can buy, at the expenditure of the [Board's] finite financial resources." J.R. v. Bd. of Educ. of the City of

Defendant points to no material facts that militate disturbing the IHO's findings, especially given the standard for judicial review of administrative IDEA hearings. Accordingly, Defendant's motion for summary judgment on this issue is hereby DENIED, and Plaintiff's motion for summary judgment on this issue is hereby GRANTED.

### (2)  Other Considerations for Reimbursement

Having upheld the findings by the IHO that T.R.'s IEP promised an appropriate education, this Court need not assess whether Mary McDowell was an appropriate placement for T.R. Under Carter, IDEA entitles parents to tuition reimbursement only when both (1) the IEP placement is inappropriate and (2) the private placement is appropriate. Carter, 510 U.S. at 15. Because Plaintiff has met its burden as to the first Carter step, requiring the Board to reimburse R.R. for the total of her son's tuition would be unwarranted.[3]

_____

Rye Sch. Dist., 345 F. Supp. 2d 386, 399 (S.D.N.Y. 2004).

[3] Plaintiff also contends that Defendant was not entitled to tuition reimbursement because the student had never received special education or related services under the authority of a public agency. See 20 U.S.C. § 1412(a)(10)(C)(ii) ("If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public

**(3) Reimbursement for the First Month's Tuition**

The IHO ordered the Board to reimburse R.R. for one month's tuition at Mary McDowell, since T.R.'s exact class site was not known until the July before the relevant school year. The IHO found one month to be a reasonable amount of time for R.R. to investigate the IEP-recommended school. (Findings of Fact and Decision, In the Matter of T.R., Case No. 41841, at 20.) The SRO did not re-consider the IHO's decision on this issue and found, rather, that the Board had not properly preserved the issue for appeal.

New York Rules and Regulations provide that a "respondent who wishes to seek review of an impartial hearing officer's decision may cross-appeal from all or a portion of the decision by setting forth the cross-appeal in respondent's answer." 8 N.Y.C.R.R. 279.4(b). The Board argued in its Verified Answer before the SRO that the IHO's decision granting a one-month

_____

agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.") (emphasis added). However, nothing on the record indicates that T.R. never received education or related services under the auspices of a public agency. To the contrary, the parts of the record which Plaintiff cites for this proposition state that the Board had paid for some of T.R.'s therapeutic services. (See Pl.'s Memo. of Law in Support of Pl.s Mot. for Summary Judgment, at 15, citing Application of a Child with a Disability, No. 01-096, Oct. 1, 2002, in Baum Dec., Ex. A at 1-2.)

reimbursement should be reversed (Application, in Baum Dec. at Ex. F, at 26), and the SRO had granted the Board leave to file this Answer late because of the aftermath of the events of September 11, 2001 (see Application, in Baum Dec. at Ex. A, at 1).

Considering this issue on the merits, this Court has found no authority permitting R.R. to recover reimbursement for the first month of T.R.'s tuition at Mary McDowell. To the contrary, R.R. is "entitled to reimbursement only if a federal court concludes both [1] that the public placement violated the IDEA and [2] that the private school placement was proper under the Act." Carter, 510 U.S. at 15. Because T.R.'s public placement comported with all procedural and substantive requirements of the IDEA, see II.B.1, supra, R.R. is not entitled to any reimbursement, including for the first month of her son's Mary McDowell tuition.

Accordingly, Defendant's Motion for Summary Judgment is DENIED as to all reimbursement sought. Plaintiff's Motion for Summary Judgment is GRANTED as to all reimbursement sought.


## CONCLUSION

For the reasons contained supra, Plaintiff Board of Education's Motion for Summary Judgment is GRANTED, and Defendant

R.R.'s Motion for Summary Judgment is DENIED.  The Clerk of the
Court is ordered to close the docket for this case.

SO ORDERED.

Dated:     New York, New York
           May 24, 2006

                                    _Deborah A. Batts_
                                    Deborah A. Batts
                                    United States District Judge